### NILES v. LUDLOW VALVE MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 13, 1913.)

No. 103.

CORPORATIONS (§ 156*)—PROFITS—RIGHTS OF COMMON AND PREFERRED STOCK-HOLDERS.

Preferred stockholders of a corporation, where the certificate of incorporation provides, as permitted by the law of the state, that the preferred stock should "receive interest or dividends of 8 per cent. per annum and be preferred as to capital as well as to dividends," who have for years received their dividends, have no interest in surplus profits which have been allowed to accumulate during such years; but such earnings belong to the common stockholders, and may be distributed among them as cash dividends, or in the form of stock dividends.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. § 156.*]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York; Charles M. Hough, Judge.

Action at law by William W. Niles, as administrator of Isabel W. Niles, deceased, against the Ludlow Valve Manufacturing Company. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 196 Fed. 994.

Niles & Johnson, of New York City (Hartwell Cabell, William W. Niles, and John J. Cunneen, all of New York City, of counsel), for plaintiff in error.

Samuel Untermyer, Louis Marshall, and Abraham Benedict, all of New York City, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. At a meeting of the board of directors of the defendant corporation held February 3, 1911, the following resolution was duly ratified:

"Further resolved that the directors of the company be, and they hereby are, authorized, in their discretion, to distribute said increased stock (amounting to 3,000 shares of general stock of the company) by way of dividend or otherwise, as they may determine, to the holders of the issued and outstanding shares of general stock of the company in the proportion of their holdings of said general stock as of such date as may be fixed by the board of directors of the company."

This resolution had previously been passed at a special meeting of stockholders by an affirmative vote of 2,989 shares of common stock and 3,401 shares of preferred stock. The plaintiff, who, as administrator, represents 100 shares of preferred stock, insists that he is entitled to share in this division of the accumulated surplus. The original capitalization of the defendant company was $700,000 divided into 4,000 shares of cumulative preferred stock, which received annual dividends of 8 per cent. and was "preferred as to capital as well as dividends," and 3,000 shares of common stock, par value of $100 each.

The sole question to be determined is whether a preferred stockholder of the defendant is entitled to share in the stock dividend declared as aforesaid. The New Jersey law at the date of the incorporation of the defendant provides that preferred stockholders are entitled to a fixed yearly dividend not exceeding 8 per cent., which is to be paid before any dividend can be declared on the common (or general) stock. It also provides that the preferred stockholders shall in no event be personally liable for the debts of the corporation. In short, the preferred stockholders are a privileged class, receiving a fixed and certain rate of interest without incurring any personal liability for the debts of the corporation. Their legal status approaches nearer to that of bondholders than of common stockholders.

Dividends have been paid by the defendant for 20 years and in almost every instance the dividend on the common stock has been larger than on the preferred. Never has there been any formal protest or objection by the preferred stockholders, including the plaintiff and his intestate. The preferred stockholders had the voting power and could have elected a board of directors and officers wholly in their interests had they so desired. During nine years, from 1891 to 1910 the company paid 15 per cent. to its common stockholders during five years and 10 per cent. during three years, without objection from the preferred stockholders. This fact while it may not operate as an estoppel, is persuasive evidence as to their understanding of the reciprocal rights of the two classes of stockholders.

Judge Hough correctly states the issue when he says that the question turns upon who owned the $500,000 accumulated by the defendant prior to the time the stock dividend was declared. If the common stockholders were entitled to have the amount dis-

tributed to them as cash, they were clearly entitled to certificates of stock representing that cash. It seems evident that as these profits arose from year to year, the board of directors might properly have divided them annually, as dividends, among the common stockholders. We think they might legally have done this, and, if so, it is not easy to understand how the common stockholders lost these rights because the board reserved the division until the surplus had reached the sum of $500,000. The fund, large or small, belonged to the common stockholders and whether they received cash, or certificates which represented cash, is immaterial. These stockholders have the burden of administration upon them; if the corporation is unsuccessful, the loss falls upon them; if successful they receive the benefits. We think that when the preferred stockholders receive the large interest of 8 per cent. provided for in the certificate they receive all to which they are entitled from the income of the corporation. It seems evident that the rights of the respective stockholders must be measured by the certificate of incorporation and the law of New Jersey in force when the defendant was organized. By this certificate the preferred stockholders were entitled to a dividend of 8 per cent. whether the common stockholders received any dividend or not, and they are preferred as to capital as well as interest. Upon what principle of law or equity should they be permitted to share in surplus earned by the corporation when they are exempted from bearing any of the loss incurred? Before a dollar can be paid as a dividend to the common stockholder the entire 8 per cent. must be paid to the preferred stockholders. In addition to these advantages, it is now asserted that though they bear no share of the burden when the business is unsuccessful, they should share equally with the common stockholders when it is prosperous. We venture to think that very little of the common stock would have been subscribed, if it had been stated at the time that such were the conditions which surrounded it. The common stockholders bear substantially all the losses of adversity and are entitled to the gains of prosperity. A contract that they should assume all the risk with no corresponding advantage should be clearly established. We find nothing in the law or the certificate or in the past action of the defendant to indicate that any one connected with the business supposed that the preferred stockholders were to share equally with common stockholders in the division of surplus earnings. If the plaintiff's contention be correct, why should not the preferred stockholders share ratably with the common stockholders in all the surplus applicable for dividends? The absolute unfairness of such a division is at once recognized, and, to meet the suggestion, plaintiff argues that only the surplus after the common stock had been paid its 8 per cent. dividend should be thus divided. But there is nothing to sustain such contention. Where can be found any agreement to pay the common stockholders an 8 per cent. dividend at any time or under any conditions? Once admit that the preferred stockholder is entitled to share in the surplus after his preferred divi-

dend is paid, and it follows as an inevitable conclusion that he shares on equal terms with the common stockholder.

We think the preferred stockholders are entitled to receive a dividend of 8 per cent. per annum and nothing more. The judgment is affirmed with costs.

WARD, Circuit Judge (dissenting). The general principle is that all stockholders share equally in net profits, except as their relations are altered by statute or contract. If a preference is given to one class of stockholders over the rest, it should be construed consistently with this general principle as far as possible. For instance, if the preferred stockholders are given the right to receive a dividend of a fixed amount before the common stockholders get anything, the latter should next receive an equal amount, and then the surplus, if any, be equally divided between the preferred and common stockholders. Where the privilege is intended to be restrictive, the intention should be expressed as by saying that the preferred stockholders are to be paid a certain dividend before the common stockholders get anything and are to receive nothing more. In this case the certificate of the company provided that the preferred stockholders should be paid an annual cumulative dividend of 8 per cent. before the common stockholders received anything. There were no words of restriction. Therefore I think they were entitled to receive their proportion of the stock dividend in question. It is true that dividends had for many years been declared and paid as if the privilege to the preferred stockholders were restrictive, the question never having been raised, but I think this does not prejudice the rights of the preferred stockholder who now for the first time raises the question.